UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Zehao DING,<br><br>Petitioner,<br><br>v.<br><br>Warden, Adelanto ICE Processing Center; Thomas GILES, Field Office Director, Los Angeles Field Office, Immigration and Customs Enforcement;<br>Markwayne MULLIN, Secretary of the Department of Homeland Security;<br>U.S. DEPARTMENT OF HOMELAND SECURITY;<br>Todd BLANCHE, U.S. Attorney General; and Todd LYONS, Acting Director of U.S. Immigration and Customs Enforcement; in their official capacities,<br><br>Respondents. | Case No.<br><br>**PETITION FOR WRIT OF HABEAS CORPUS** |

## INTRODUCTION

1. Petitioner Zehao Ding came to the United States lawfully as a student. He built his adult life here: he lived with his family in Southern California, worked full time, paid taxes, and became an active member of his church. His immigration record reflects lawful F-1 admission, and his bond submission documented a fixed family residence, continuous employment, tax compliance, and substantial religious and community ties.

2. Mr. Ding is now incarcerated by the United States Government—not because any criminal court convicted him of driving under the influence, but because an Immigration Judge treated two arrest records as sufficient proof that he is presently dangerous.

3. One of those incidents occurred years ago and did not result in a conviction. The other occurred in January 2026 and, months later, has not resulted in a criminal charge. Yet on August 18, 2026, the Immigration Court relied principally on those unadjudicated allegations to deny Mr. Ding release.

4. Most strikingly, the Immigration Judge reached that conclusion without hearing a single word from Mr. Ding himself concerning either incident, his present conduct, his current circumstances, or any matter bearing on whether he actually poses a present danger to the community.

5. The Immigration Judge further stated that he had seen "no rehabilitation evidence." But Mr. Ding had never been convicted of the alleged conduct from which he was apparently expected to rehabilitate himself. And the record before the Immigration Court documented substantial evidence of his present life and character: stable full-time employment since January 2025, consistent tax compliance, residence with his family, longstanding community relationships, and sustained participation in the Church of Jesus Christ of Latter-day

Saints, including baptism, confirmation, priesthood ordination, worship, study, and volunteer service.

6. Mr. Ding does not contend that an Immigration Judge must ignore an arrest record. Nor does he ask this Court simply to reweigh ordinary bond factors or sit as an appellate immigration judge. His claim is narrower and more fundamental: an arrest may justify inquiry, but it cannot substitute for one. Where unadjudicated accusations become the decisive basis for continued physical incarceration, the Fifth Amendment requires a meaningful process for determining whether those accusations actually establish present dangerousness.

7. That process did not occur here. The Government established the existence of arrests; the Immigration Court treated them as sufficient proof of present danger; and Mr. Ding remained confined without meaningful factual testing of the conduct underlying the allegations and without testimony from the person whose liberty was at stake.

8. Freedom from physical imprisonment lies at the heart of the liberty protected by the Fifth Amendment. Mr. Ding therefore seeks a writ of habeas corpus requiring his release from unlawful civil detention. At minimum, he seeks constitutionally adequate custody review that does not permit unadjudicated accusations to become a substitute for individualized factfinding before the Government continues to deprive him of his liberty.

**JURISDICTION**

9. Petitioner Zehao Ding is in the physical custody of Respondents and is presently detained at the Adelanto ICE Processing Center in Adelanto, California, within the Central District of California.

10. This Court has jurisdiction pursuant to 28 U.S.C. § 2241(c)(3) because Petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." Petitioner

challenges the constitutionality of his continued civil immigration detention under the Due Process Clause of the Fifth Amendment. This Court also has federal-question jurisdiction pursuant to 28 U.S.C. § 1331.

11. The Suspension Clause, U.S. Const. art. I, § 9, cl. 2, protects the availability of habeas corpus to test the legality of executive detention. Petitioner is physically confined within this District and seeks relief from his present federal custody.

12. This Court may grant habeas relief pursuant to 28 U.S.C. § 2241 and appropriate declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202. The Court may also issue such orders as are necessary or appropriate to preserve its jurisdiction and the effectiveness of any eventual habeas relief pursuant to the All Writs Act, 28 U.S.C. § 1651(a).

**VENUE**

13. Pursuant to *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 493–500 (1973), venue lies in the United States District Court for the Central District of California because Petitioner is currently detained at the Adelanto ICE Processing Center in Adelanto, California, within this District.

14. Venue is also proper in this Court pursuant to 28 U.S.C. § 1391(e) because Respondents are officers, employees, or agencies of the United States, and because a substantial part of the events or omissions giving rise to Petitioner's claims occurred within the Central District of California.

**REQUIREMENTS OF 28 U.S.C. § 2243**

15. The Court must grant the petition for writ of habeas corpus or order Respondents to show cause "forthwith," unless the petitioner is not entitled to relief. 28 U.S.C. § 2243. If an

order to show cause is issued, Respondents must file a return "within three days unless for good cause additional time, not exceeding twenty days, is allowed." *Id.*

16. Habeas corpus is "perhaps the most important writ known to the constitutional law . . . affording as it does a *swift* and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963) (emphasis added). "The application for the writ usurps the attention and displaces the calendar of the judge or justice who entertains it and receives prompt action from him within the four corners of the application." *Yong v. I.N.S.*, 208 F.3d 1116, 1120 (9th Cir. 2000) (citation omitted).

**PARTIES**

17. Petitioner **Zehao Ding** is a citizen of China who has been in immigration detention since July 27, 2026. ICE arrested Petitioner in Southern California and has continued to detain him at the Adelanto ICE Processing Center in Adelanto, California.

18. Respondent **Warden** is the Warden of the Adelanto ICE Processing Center, where Petitioner is detained. The Warden has immediate physical custody of Petitioner and is sued in his or her official capacity.

19. Respondent **Thomas Giles** is the Field Office Director of ICE Enforcement and Removal Operations' Los Angeles Field Office. As Field Office Director, he exercises supervisory authority over Petitioner's immigration custody and detention within the Los Angeles Field Office area and is sued in his official capacity.

20. Respondent **Markwayne Mullin** is the Secretary of the Department of Homeland Security. He is responsible for the implementation and enforcement of the Immigration and Nationality Act and oversees ICE, the agency responsible for Petitioner's detention and removal. He is sued in his official capacity.

21. Respondent **U.S. Department of Homeland Security** is the federal agency responsible for implementing and enforcing the Immigration and Nationality Act, including the detention and removal of noncitizens.

22. Respondent **Todd Blanche** is the U.S. Attorney General. He is responsible for the Department of Justice, of which the Executive Office for Immigration Review and the immigration court system are component agencies. He is sued in his official capacity.

23. Respondent **Todd Lyons** is the Acting Director of U.S. Immigration and Customs Enforcement. He oversees ICE, including ICE Enforcement and Removal Operations, and is responsible for the administration and enforcement of immigration detention and removal operations. He is sued in his official capacity.

## LEGAL FRAMEWORK

24. Petitioner is detained pursuant to INA § 236(a), 8 U.S.C. § 1226(a). That provision authorizes discretionary civil detention of certain noncitizens pending a decision on removal and permits release on bond or conditional parole. Petitioner was lawfully admitted to the United States in F-1 nonimmigrant status and is not detained as an arriving noncitizen under 8 U.S.C. § 1225(b).

25. Petitioner is not subject to mandatory detention under INA § 236(c), 8 U.S.C. § 1226(c). DHS has identified no conviction or other statutory predicate placing Petitioner within a mandatory-detention category. His continued detention therefore depends upon the Government's discretionary civil-detention authority under § 1226(a).

26. Civil immigration detention is regulatory rather than punitive. Its legitimate purposes include ensuring appearance at immigration proceedings and protecting the

community where an individualized record demonstrates present dangerousness. *See Zadvydas v. Davis*, 533 U.S. 678, 690–91 (2001).

27. The Due Process Clause of the Fifth Amendment applies to civil immigration detention. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty" protected by due process. *Id.* at 690. Even where Congress authorizes detention, the procedures by which physical liberty is denied remain subject to constitutional limitations.

28. Petitioner does not contend that § 1226(a) bond proceedings are categorically unconstitutional. Nor does he contend that due process categorically prohibits an Immigration Judge from considering arrest records. The Ninth Circuit has recognized that § 1226(a) generally provides an individualized custody process and has rejected a categorical rule requiring the Government to bear a clear-and-convincing burden at every ordinary § 1226(a) hearing. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189 (9th Cir. 2022).

29. Petitioner's claim is instead as applied. Due process requires that the procedures actually employed provide a meaningful opportunity to contest the factual basis for continued confinement. *See Mathews v. Eldridge*, 424 U.S. 319, 333–35 (1976). In assessing the adequacy of process, courts consider the private interest at stake, the risk of erroneous deprivation under the procedures used, the probable value of additional safeguards, and the Government's interests.

30. The private interest here is exceptionally weighty: continued physical confinement. The risk of error is likewise substantial where present dangerousness is inferred principally from arrest allegations that have never resulted in criminal convictions and where the underlying conduct has not been meaningfully adjudicated.

31. An arrest may be relevant to a custody determination, but an arrest establishes only that law enforcement suspected criminal conduct. It does not itself adjudicate whether that conduct occurred, whether the allegations are reliable, or whether the person presently poses a danger to the community. When unadjudicated allegations become the dispositive basis for continued incarceration, meaningful procedural safeguards are necessary to reduce the risk of erroneous deprivation of liberty.

32. The Ninth Circuit has repeatedly emphasized that immigration custody proceedings must provide a meaningful opportunity to be heard and that the procedural protections surrounding civil detention must correspond to the substantial liberty interest at stake. *See, e.g., Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011). Petitioner relies on those general due-process principles, not on any categorical rule that every § 1226(a) hearing must follow a particular burden-of-proof formula.

33. Nor does Petitioner ask this Court merely to reweigh discretionary bond factors. Judicial review of the discretionary merits of an immigration bond determination is distinct from review of a constitutional claim concerning the adequacy of the procedure through which continued detention was imposed. Petitioner challenges the latter.

34. Here, the Immigration Court found Petitioner presently dangerous based principally on two unadjudicated arrest records, without hearing testimony from Petitioner concerning the alleged conduct, his present circumstances, or any matter bearing on current dangerousness. The Immigration Judge further faulted Petitioner for presenting "no rehabilitation evidence," even though neither alleged DUI had resulted in any criminal conviction and the more recent incident had not resulted in a criminal charge.

35. The question presented is therefore not whether the Immigration Judge was permitted to consider Petitioner's arrest history. The question is whether the Fifth Amendment permits the Government to continue incarcerating a civil detainee where unadjudicated accusations became the effective substitute for individualized factual inquiry into present dangerousness. Petitioner respectfully submits that it does not.

**FACTS**

36. Petitioner Zehao Ding is a native and citizen of the People's Republic of China. He lawfully entered the United States in F-1 nonimmigrant student status on January 15, 2020.

37. After his admission, Petitioner built his adult life in Southern California. He has lived with his family, maintained stable employment, paid taxes, and developed substantial religious and community ties.

38. Petitioner and his family have sought protection in the United States based on fear of persecution in China. Petitioner has pursued immigration relief and has remained readily locatable and available to immigration authorities.

39. Before ICE detained Petitioner, he and his family had been pursuing protection through the affirmative asylum process. ICE's commencement of removal proceedings displaced that affirmative posture and required Petitioner to pursue protection defensively before the Immigration Court while detained. Petitioner's underlying protection claim therefore remains pending, but now proceeds within removal proceedings rather than through the non-detained affirmative process in which his family had previously participated.

40. Since January 2025, Petitioner has maintained full-time employment. His bond submission included employer verification, numerous paystubs, and tax records reflecting approximately $47,696 in wages during 2025.

41. Petitioner also submitted evidence of a fixed family residence in Placentia, California, where his parents and sister reside, together with documentation of his family relationships and community support.

42. Petitioner became a member of the Church of Jesus Christ of Latter-day Saints in December 2024. His bond evidence documented his baptism and confirmation, ordination to the Aaronic Priesthood, regular worship and scripture study, volunteer service, church cleaning, participation in church activities, and assistance to visitors and other congregants.

43. On July 27, 2026, ICE arrested Petitioner and placed him in civil immigration detention. He is presently confined at the Adelanto ICE Processing Center.

44. Petitioner is detained under the discretionary authority of INA § 236(a), 8 U.S.C. § 1226(a). DHS has not identified any criminal conviction rendering him subject to mandatory detention under § 1226(c).

45. On August 18, 2026, Petitioner received a custody redetermination hearing before the Immigration Court. Petitioner submitted extensive documentary evidence addressing residence, employment, tax compliance, family ties, religious participation, community support, and his ability and willingness to comply with future immigration proceedings.

46. The principal adverse evidence concerned two prior DUI-related arrests. The first arose in 2019. DHS's own criminal-history record reflects that the matter did not result in a DUI conviction and includes a disposition reflecting release for lack of sufficient evidence, followed by relief under California Penal Code § 851.93.

47. The second arrest occurred on January 5, 2026. More than seven months later, no criminal complaint had been filed against Petitioner arising from that incident, and Petitioner had not been convicted of any offense arising from it.

48. Notwithstanding the absence of a conviction from either incident, the Immigration Judge focused principally on the existence of the two arrest records—particularly the more recent January 2026 arrest—and concluded that Petitioner presented a danger to the community.

49. The Immigration Judge reached that determination without asking Petitioner a single question. Petitioner was not questioned regarding the alleged conduct underlying either arrest, his present conduct, his current circumstances, his religious and community life, or any other matter bearing directly on whether he presently posed a danger.

50. The Immigration Judge further stated that he had seen "no rehabilitation evidence." Petitioner, however, had never been convicted of the alleged DUI conduct from which he was apparently expected to demonstrate rehabilitation. Moreover, the documentary record contained substantial evidence concerning Petitioner's present conduct and stability, including sustained employment, tax compliance, family residence, and extensive religious and community participation.

51. The Immigration Court denied bond based on dangerousness. Petitioner therefore remains physically confined under § 1226(a), notwithstanding that the decisive adverse allegations have never resulted in criminal convictions and were not meaningfully tested through testimony at his custody hearing.

52. Petitioner's continued detention has also begun to affect his physical well-being. He reports that he initially suffered severe diarrhea requiring medical treatment. More recently, he has experienced persistent back pain for which he requested medical attention but did not promptly receive care. He has also developed throat pain and hoarseness and reports a worsening fungal condition affecting his feet, including peeling and broken skin, for which he has sought treatment.

53. Petitioner further reports that, upon entering detention, he repeatedly requested additional clothing because of cold conditions but did not receive it, and that he initially had difficulty obtaining sufficient food. These circumstances reinforce the concrete and ongoing consequences of continued physical confinement while the constitutionality of his custody remains unresolved.

54. Petitioner does not ask this Court merely to reconsider whether the Immigration Judge should have assigned greater or lesser weight to particular bond factors. He challenges the constitutionality of the process by which unadjudicated arrest allegations became the effective basis for continued civil incarceration without meaningful factual inquiry into whether those allegations established present dangerousness.

## CLAIMS FOR RELIEF

## COUNT I

### Violation of Fifth Amendment Due Process: Constitutionally Inadequate Custody Determination

55. Petitioner repeats, re-alleges, and incorporates by reference the preceding allegations.

56. The Fifth Amendment prohibits the Government from depriving any person of liberty without due process of law. U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty" protected by the Due Process Clause. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

57. Petitioner does not contend that an Immigration Judge is categorically prohibited from considering arrest records in determining dangerousness. Nor does he seek ordinary judicial reweighing of the discretionary factors considered at his bond hearing. Rather,

Petitioner challenges whether the procedure actually afforded him provided a meaningful opportunity to contest the factual basis for continued physical confinement.

58. At Petitioner's August 18, 2026 custody hearing, the Immigration Court relied principally upon two DUI-related arrest records to find Petitioner presently dangerous. Neither incident resulted in a criminal conviction, and the more recent January 2026 incident had not resulted in the filing of any criminal charge.

59. The Immigration Judge nevertheless made a dispositive finding of dangerousness without hearing testimony from Petitioner concerning either alleged incident, without questioning him regarding his present conduct or circumstances, and without meaningfully adjudicating whether the allegations underlying the arrest records reliably established present dangerousness.

60. The Immigration Judge further stated that he had seen "no rehabilitation evidence." That reasoning effectively required Petitioner to demonstrate rehabilitation from conduct for which he had never been convicted and, as to the recent incident, had never even been criminally charged.

61. The risk of erroneous deprivation was particularly substantial because Petitioner had submitted extensive evidence bearing on his present circumstances, including continuous employment, tax compliance, a stable family residence, substantial family ties, and sustained religious and community participation.

62. Under the circumstances presented here, the custody proceeding permitted unadjudicated accusations to become the effective substitute for individualized factual inquiry into present dangerousness. The process afforded Petitioner therefore failed to provide the meaningful opportunity to be heard required by the Due Process Clause.

63. Petitioner is entitled to habeas relief remedying that unconstitutional deprivation of liberty.

**COUNT II**

**Violation of Fifth Amendment Due Process: Continued Arbitrary Civil Detention**

64. Petitioner repeats, re-alleges, and incorporates by reference the preceding allegations.

65. Civil immigration detention is regulatory, not punitive. Although INA § 236(a), 8 U.S.C. § 1226(a), authorizes discretionary detention pending removal proceedings, that authority remains constrained by the Fifth Amendment and must bear a constitutionally sufficient relationship to a legitimate regulatory purpose.

66. Petitioner is not subject to mandatory detention. His continued physical confinement rests upon the determination that detention is necessary because he presently poses a danger to the community.

67. That determination, however, resulted from the constitutionally deficient procedure described above. The Government therefore continues to deprive Petitioner of physical liberty on the basis of a danger finding reached principally from unadjudicated arrest allegations without meaningful factual testing.

68. Petitioner does not assert that every erroneous or disputed bond determination renders detention unconstitutional. Here, however, the asserted regulatory justification for continued detention depends upon the very determination produced by the constitutionally inadequate proceeding challenged in Count I.

69. Continued civil incarceration on that basis is arbitrary and cannot supply a constitutionally adequate justification for the ongoing deprivation of Petitioner's physical liberty.

70. Petitioner is therefore entitled to release from custody. Alternatively, he is entitled to prompt constitutionally adequate custody proceedings sufficient to cure the violation alleged herein.

## PRAYER FOR RELIEF

WHEREFORE, Petitioner prays that this Court grant the following relief:

a. Issue a Writ of Habeas Corpus ordering Respondents to immediately release Petitioner from ICE custody, subject to such reasonable conditions of release as the Court deems appropriate;

b. Declare that Petitioner's continued detention violates the Due Process Clause of the Fifth Amendment because the custody determination upon which that detention rests did not provide constitutionally adequate process for determining whether unadjudicated arrest allegations established present dangerousness;

c. Issue an Order to Show Cause pursuant to 28 U.S.C. § 2243 and establish an expedited schedule for adjudication of this Petition;

d. In the alternative to immediate release, order Respondents to provide Petitioner with a prompt, constitutionally adequate individualized custody determination before a neutral adjudicator, at which Petitioner is afforded a meaningful opportunity to testify, present evidence, and rebut the factual allegations relied upon to establish dangerousness;

e. Require, at any such custody determination, that continued detention rest upon reliable, individualized evidence of present dangerousness rather than the mere existence of unadjudicated arrest records, and impose such further procedural safeguards as this Court determines are necessary to satisfy the Fifth Amendment;

f. Retain jurisdiction for purposes of enforcing the Court's orders and ensuring compliance with any relief granted;

g. Award Petitioner reasonable attorney's fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412, to the extent authorized by law; and

h. Grant such other and further relief as this Court deems just and proper.

DATED this 25st of August, 2026.

/s/ *Jinrui Zhang*

Jinrui Zhang, Bar ID NY-6197503
*4117 Crescent St 8L*
*Long Island City, NY 11101*
*T: 646-918-0915*
*Jinrey.zhang@gmail.com*
*Attorney for Petitioner*
*Pro Hac Vice Pending*

**Verification by Someone Acting on Petitioner's Behalf Pursuant to 28 U.S.C. § 2242**

I am submitting this verification on behalf of Petitioner because I am Petitioner's attorney. I have discussed with Petitioner the events described in this Petition. Based on those discussions, I hereby verify that the statements made in this Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

/s/ *Jinrui Zhang*
Jinrui Zhang

Date: August 25, 2026